### KUAMU, W., ET AL., *vs.* KAELEU, W.

ON APPEAL FROM CHIEF JUSTICE HARRIS.

AT THE HEARING on a bill in equity for the cancellation of a deed of land as being fraudulent, the defendant offered testimony to prove that the ancestor from whom plaintiffs claimed was not the person who owned the land, but was another person of the same name, and whose heir at law was not the plaintiff, but one Kahula, not a party to the bill;

HELD, that the Court had jurisdiction to proceed with the plaintiff's bill as to the validity of the deed without determining the claim of Kahula.

Opinion of the Court by McCULLY, J.

The plaintiff (her husband joining) brought a bill in equity praying that a deed purporting to be executed by one Kikipine in favor of the defendant, conveying real estate in Manoa

Valley, be cancelled as being fraudulent. The date of the execution of the deed is June 14, 1878, and Kikipine died on the 28th day of June. The plaintiff brings the bill as the cousin of the deceased intestate and his next of kin and heir at law. In proof of this she brings forward several reputable witnesses who testify that the deceased was known to them to have been born at Waimea, in the Island of Hawaii; that his real name was Naihe, but that coming to Honolulu in his youth, he had acquired the name Kikipine (Six Pins) from his service in a bowling-alley; that he went to Manoa Valley, acquired property and lived there till his death; and that Kuamu was his first cousin and only surviving relative. The case had proceeded thus far when the defendant offered to destroy the plaintiff's standing in the case by showing that the deceased was another man than the person born at Waimea, and that the real Kikipine had a surviving brother, by name Kahula. They bring this Kahula and a body of credible witnesses, who testify that the deceased was born at Waimanalo, in this Island, giving the names of his parents, who are different persons 'from the Waimea people; that his original name was Naihe, but that coming to Honolulu when a young man he was given the name Kikipine, from his employment in a bowling-alley; that he went to Manoa Valley, where he lived and died; and that Kahula is his own brother.

Both parties offered further testimony before this Court to establish the identity of the deceased with the Naihe of Waimea and Waimanalo.

The defendant, claiming that she has proved that the deceased was a different man from the one to whom the plaintiff is cousin, argues to the Court that the plaintiff has no interest in the question of the validity of the deed, and therefore no standing in Court.

The Chief Justice, in his opinion, after discussing at large the testimony relating to the two Kikipines or Naihes, says: "For the purposes of this case it seems to me that the rela-

18

tionship of Kuamu is fully made out; though in a trial between Kahula and Kuamu I should be quite unbiased, yet the weight of testimony is in favor of Kuamu, as it appears to me, and I so decide that Kuamu is shown to me to be the heir of Kikipine, though I do so without prejudice to Kahula's right in any action that he may bring, for he is not a party to this action."

The new evidence cannot be said to contribute to the decision of the question of Kikipine's origin and identity, for it is about an equal addition to both sides. But we do not think it necessary for the purposes of this case to make a decision between them, even to the extent and with the qualification expressed by the Chief Justice. We do not intend to express an opinion substantially different, for we agree with the conclusions of that Court, and only desire to qualify the terms of our opinion, so that we may more certainly guard against any color of a decision in favor of the claims of either the alleged cousin or the alleged brother of the deceased to be his sole heir at law, which might be pleaded as *res adjudicata* in other proceedings. It is sufficient to say that Kuamu has made a case, aside from the claim of Kahula, to stand in this Court as heir at law of the deceased, and entitled to bring a bill in equity for the cancellation of a fraudulent deed, and that Kahula has been shown (the claim of Kuamu not having been advanced) to be the brother of the deceased, and would be entitled to bring a bill relating to the estate. That is to say, either party establishes his right to the estate against all persons known to the Court, except the other, for the purposes of this case. Kahula has not brought his bill. The interests of the claimants are adverse, and they cannot join in the same bill, for neither of them will admit the pretensions of the other. If Kahula should also bring his bill, it would not diminish the right of the present plaintiff to bring hers; and if it is held that the Court could not determine the question of the validity of the deed without first deciding which was

Kuamu, w., *et al.*, *v*. Kaeleu, w.

the real heir at law, it would be in no better position to do so than it is now, for it is doubtful if the subject matter, the contesting of each other's heirship, would be within the jurisdiction of the Court. If the bill is dismissed for the want of a proper party, or, rather, because there are two different persons apparently entitled as heirs, the deed not being cancelled, there is no estate of the deceased to be taken, whereupon a proceeding could be properly founded to determine the question of identity and heirship. We hold, therefore, that the plaintiff in this bill having shown what may be called a right of litigation, a right to claim the estate, may show cause by her bill why the deed to the defendant should be cancelled for fraud.

On this matter of fraud, no further testimony was offered on the appeal and no argument was made. We have examined the testimony, and agree with the Chief Justice in finding the deed to be fraudulent. It will not be necessary to set forth the facts on which that conclusion is based, for they involve no new principles, and every such case must be judged by itself. They are fully set forth in the opinion of the Chief Justice.

In this way we concur with the result reached by the Chief Justice.

Judgment for the plaintiff.

Castle & Hatch and J. M. Davidson for complainants.

E. Preston and C. Brown for defendant.

Honolulu, August 15, 1878.

---

OPINION OF CHANCELLOR HARRIS.

The plaintiff in this case claims a piece of land in Manoa Valley by reason of being first cousin and only heir to a person who has been known nearly his whole life as Kikipine, and the defendant claims the same land by virtue of a deed from Kikipine which the plaintiff avers to be a fraud and probably a forgery.

The plaintiff proves, or attempts to prove, her relationship by means of a large number of highly respected witnesses who have known the deceased since his boyhood. These witnesses say that the man's real name was Naihe, and that he came from Hawaii; that the name Kikipine was a nickname given to him by foreigners because he was employed in a bowling-alley, and that it was a corruption of "six pins." This seems to have been the relationship acknowledged by all persons during Kikipine's lifetime. But at the trial, counsel for the defendant announced that they had just heard that Kikipine had a brother still living, and, after having had time allowed, introduced a man who called his name Kahula and testifies that he is the brother of Kikipine; that the real name of Kikipine was Naihe, and that he was called Kikipine because he used to set pins in the bowling-alley; that his father was Kukae and his mother's name was Puu; and that they were born at Waimanalo, on this Island; and that he claims this property as his own, though he has not pursued it hitherto. This testimony is supported by a witness by the name of Lula, k., and Keoni Kapu. The peculiarity of it is that, though so wide and different accounts are given of the birth and the place of birth of the deceased man, both parties give the same name and the same nickname, and the same reason for the nickname, and both speak with the same positiveness as to the place of birth—the witness Kalua even stating that he knows that Kikipine was born at the same place that he was, viz., Waimea, Hawaii, and that he lived there together with him until they were both grown up; that he knew the father and mother of Kikipine, whose names were Kumoa, k., the father, and Lonohiwa, w., the mother.

It would appear to make a little difference to the defendant whether the plaintiff Kuamu or the alleged brother Kahula were the real heirs of Kikipine, but defendant's counsel makes the point because he thinks that if Kahula should be shown to be the heir, Kuamu would have no standing in Court, and

therefore the bill must be dismissed because Kahula has not made himself a party to it.

Of course one story or the other must be untrue. If Kikipine was borne at Waimanalo from Kukae, k., and Puu, w., he was not borne at Waimea of Kumoa, k., and Lonohiwa, w. But inasmuch as the evidence is very strong that he recognized the plaintiff, Kuamu, as his relation during his lifetime, and there is no evidence that he had any fraternal intercourse with Kahula.

For the purposes of this case it seems to me that the relationship of Kuamu is fully made out, though in a trial between Kahula and Kuamu, I should be quite unbiased, yet the weight of testimony is in favor of Kuamu, as it appears to me, and I so decide, viz.: that Kuamu is shown to be the heir of Kikipine, though I do so without prejudice to Kahula's right in any action that he may bring, for he is not a party to this action, and is an ignorant man—apparently not quite full witted. He has been brought here as a witness, apparently ignorant of how to get into Court for his rights. This brings us to the main question: Is this a valid deed or not? Now, the deed is one of those acknowledged by the witness, Solomon Thompson, in accordance with the statute after the death of the alleged grantor. The deed purports to be made on the 14th of June, 1876, and was acknowledged before Mr. Justice Judd on the 7th of July following, for the purpose of being put of record by the sole subscribing witness, Sol. Thompson. The statute under which this so-called acknowledgment is taken, was made for the purpose of enabling persons to get on the record a deed which has failed to be acknowledged by the grantor or which the grantor refused to acknowledge. This statute, which reads as follows: "But if any party to an instrument executed within this Kingdom shall die, or depart from the Kingdom without having acknowledged his deed, or shall refuse to acknowledge it, the deed may be entered of record on proof of its execution by a subscribing witness thereto, before

any Judge of a Court of Record in this Kingdom," has no other effect legally than to give notice to every one that there is such a deed in existence. It has the effect, in fact, to preserve the testimony of Thompson and Thompson only. It is hardly necessary to dwell upon the different effect where the grantor has made the acknowledgment himself. In such a case, the grantor has made a solemn acknowledgment as provided for by the law and is estopped from denying that acknowledgment everywhere; but in this case, were the alleged grantor alive, he could challenge the truth of the subscribing witness' statements, and so his heirs may, as they do now.

It is to be observed that this deed purports to be made on the 14th of June, that Kikipine died on the 27th, and Thompson testified before the Judge on the 6th of July following; and in his testimony he remarks before the Judge that Kikipine, though of sound mind, was of feeble health; but in his testimony before this Court, he testifies that his health was good; that he was well and not feeble; that he advised him to go to the Registrar's office to acknowledge the deed; that the deceased asked him to sign the deed himself; that the defendant came to him to go and make the deed; that upon his arrival at the house the deceased told him that he had sent for him to make this deed; that he had prepared the deed before he went there; that he had first learnt the consideration on the 12th, when the woman came to him; that he left the deed with him; that Kikipine requested him to sign as a witness and said he must bring the deed to Mr. Brown; and that $50 was paid to Kikipine at that time.

Now, the testimony indicates that the defendant in this action was the mistress of Kikipine; that, although the man died in a week afterwards, there was no money found in his possession by anybody; and it is hard to understand why the deceased man should be unwilling to send for the proper officer if he wished to acknowledge his deed, and if he was

Kuamu, w., *et al.*, v. Kaeleu, w.

well, why he should not go to the proper officer. The variation of Thompson's testimony before Mr. Justice Judd and that before the Court is very marked. In his direct testimony he stated that when Kaeleu came to him that he had no horse and she gave him one, and that he went up to Kikipine's on the 14th; yet in his cross-examination he says that he came to him on the 12th; that he did not go until the 14th, which would make him to keep her horse two days, as he did not go there, according to his statement, until the evening of the 14th. These contradictions and improbabilities are so great that, on Thompson's own testimony, irrespective of the opposing testimony of others, I am compelled to disbelieve him. I mean that if there was not any opposing testimony, of which there is considerable, I should find myself constrained to disbelieve Thompson on his own testimony taken alone and the circumstances attending it. I, therefore, adjudge the deed to be null and void, and that the defendant deliver it up to be cancelled; and further, the defendant pay the costs.

J. M. Davidson and Castle & Hatch for plaintiff.

E. Preston and Cecil Brown for defendant.

Honolulu, May 25, 1878.